*324
 
 ItumN, Chief-Justice.
 

 :The defendant is indicted at common law for, disturbing a .congregation, of religious persons assembled at theii' church or place of worship, and engaged in the public worship of Almighty God, by laughing and talking iji aloud voice, and-divers indecent actions and*grijn,aces,'during the performance of divine' service. The offence is not charged as a nuisance, hut as a specific misdemeanor, in itself. The defendant has been convicted, and the question Is, whether the indictment can be supported and the State have judgment.
 

 The Constitution of this State, § 34, provides that there shall 'be no establishment of any religious church in preference to another; neither shall any person, be compelled to attend- any place of worship, contrary to his own faith
 
 ;
 
 but all persons shall be..at liberty to exercise their own mode of worship. All constraints upon the conscience of individuals are thus removed whether they be m their nature positive, that the citizen shall worship in a particular form.or profess a particular creed or negative, that he. shall not. The provisión does not profess to confer this right. It is worded, so as .to show that it is acknowledged as pre-existing. The, right, is, declared-in the Bill of Bights to. bp, a
 
 natural
 
 and. unalienable
 
 right
 
 in all, mpn? § 19. Its sanctity ip all time to come, is guaranteed, by' the Constitution. The worship of God is not therein treated as indifferent, either-in reference to the welfare of.individuals, or the common interest. On the. contrary, it is assumed to be a, moral duty incumbent upon all. men, and their highest privilege, as intelligent and accountable.beings a. duty, that, is best performed, both in honour to God, the comfort of each man and the peace and-order of society, when that, natural privilege is subjected, to no legal restraints nor allowed to be disturbed,by any person, either with or without the pretence., of authority. While therefore no church shall fie. established in preference to another, all- churches are established for the purposes of the se.~ curity of the worshippers from penalties, or from molestation. in the act of worship. The guaranty of religious freedom to all the citizens, supposes each one of them iq
 
 *325
 
 ],av(> an interest in it, and to be conscious of religious obligation; and the quiet of tbe body politic demands that the religion which the citizens profess, and which it is supposed they would profess even against the Laws of human institution, may be safely professed, and sincerely exercised ip public assemblies.' For all religion is necessarily founded upon, or productive of i principle of diffusive benevolence towatols our fellow creatures; ambits practice'Consists so much in its professors imparting to, and receiving from each other, instructions both in its doctrines upon points of faith, and its moral precepts, that the idea of practical religion cannot be separated from that of the assemblage of its professors for communion of doctrine, of charity, and of worship. Hence the phrase,
 
 ci
 
 place of public; worship!’ is appropriately introduced into tbe Constitution, pud could' not/ without defeating jhe general object of the provision, have been omitted, in that clause of the section which is restrictive of the power to compel individuals to any particular worship. So, the following clause, that all shall be free
 
 “
 
 to exercise their own mode of worship,” must be considered as embracing both the place of worship, and public worship in assemblies; and that it will be practised by individuals with; put the injunctions of the "law, or any coercion hut that of conscience.
 

 The question remains, whether the disturbance of the practice of their duties, and of the exercise of their acknowledged privileges be aii offence punishable by indictment, without a statute.
 

 It is undoubtedly so in England, with respect to the established church ; and this from a regard to the interest of religion, in which, each aiid every person in the Kingdom, from the Sovereign to the humblest subject, has a deep concern. The indictment therefore need not state any other consequence, as flowing from the iriis-conduct of the accused, such as that it'was to the nuisance of the King’s subjects; but is sufficient, if it charge |iie disturbance of a religious assembly, as-the offence
 
 ]ier sc.
 
 (1
 
 Hawk B.
 
 1, c.
 
 32,
 
 § 4.) It is - true, that-is
 
 *326
 
 jíoí the caso with respect to those classes of persons, called in their law, dissenters; for whose protection several Statutes, (1
 
 W
 
 &
 
 M.
 
 c. 18, and 52
 
 Geo. III. c.
 
 155.) have been passed. But that is upon the ground, that the principle of their law is, that such religious principles ami the exercise of such worship is against the interest of the State. They were once altogether unlawful; when declared to be otherwise, they were merely tolerated; and those thus permitted to worship, must content themselves with the permission, in the extent to which it is given. It was however, soon found, that it was necessary, if permitted at all, to secure it more effectually ; not barely for the sake of the weak consciences of the dissenters themselves, but for that of the public peace. A disturbance of their public worship is therefore made a crime by those Statutes.— But in relation to the Church established by law, no such provision was necessary; for that being deemed in its establishment, of common right and of common necessity, any disturbance of it was by consequence, held to be a common injury and public wrong. Now, our ancestors declare, that no law is required to establish any mode of worship. They hold, that God has established his own Church. They do not tolerate any branch of it. They say, men have no power over the subject, further than to prevent persons, under the pre-tence of religious discourse, from disseminating sedition or treason) that religion needs no aid from the civil power, but the guaranty of its freedom from interruption, either by unjust laws or lawless force, or wantonness of individuals. Against the former, the Constitution is an express warrant; arid by a necessary construction
 
 from that,
 
 as it
 
 seems to me,
 
 it equally forbids the latter.' In
 
 this
 
 view therefore, that every man is interested in the worship of God, arid that the disturbance of it is an injury to the whole community, I think the indictment sufficient. In the further view, that the exercise of religious worship calls together large multitudes, whose assembly is lawful, and a duty in a religious sense, and a public duty in the sense of the Con-
 
 *327
 
 síiíütion, tbe disturbance of whom, bas an. immediate ten- • dency to bitter discords, the violent commotion of neigh-, borhhods, and a breach of the peace, I also tiiinlc the indictment sufficient.
 

 This viewof the subject is sanctioned by a decision of the very point by the Constitutional Court of South-Carolina, in the case'of
 
 Bell
 
 v.
 
 Graham, (1 Nott
 
 &
 
 McCord's,
 
 Rep. 278,) and in the case of the
 
 Commonwealth v. Hoxey,
 
 (16
 
 Mass. Rep.
 
 385,) an; indictment at Common law, for a disturbance of a Town meeting for the. choice of Selectmen, was supported, upon,
 
 the
 
 ground' that such acts tended to a breach of the peace, and to tbe prevention of. elections which were necessary to the orderly government of the Town. Not" less certainly, does the public worship of Almighty God involve the good order of- political society, and its disturbance, produce wrath and violence..
 

 As to the objection that the acts aré laid on the third day of March, and on other, days and times both before and after, the. distinction is between laying them at several times without any certain day as to any one of the acts, and laying them, as here, on a day certain, and others uncertain. In the former, the indictment is bad altogether,
 
 (Shaw
 
 389, 4
 
 Mod.
 
 103,) but in the latter, it is void only as to the uncertain days, and sufficient as to the parts to which tire certain time is annexed. (10
 
 Mod.
 
 336, 2
 
 Hawk. B. C. B.
 
 2
 
 c.
 
 25, 5, 82.)
 

 The opinion of the court therefore is, that the Superior Court erred in arresting the judgment, and.- that the same he certified to that court, that it may propeed to judgment on the defendant.
 

 Per Curiam — Judgment reversed.